

# In the United States Court of Federal Claims

No. 14-305C
(Originally Filed: October 1, 2015)
(Reissued: November 5, 2015)[1]

**FILED**

NOV - 5 2015

U.S. COURT OF
FEDERAL CLAIMS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PATRICK GUARNIERI,

          *Plaintiff,*

v.

THE UNITED STATES,

          *Defendant.*

Military pay; disability retirement; wrongful discharge; BCNR; 10 U.S.C. § 1552(b); correction of military records.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Patrick Guarnieri,* Largo, FL, *pro se.*

*Devin A. Wolak,* Trial Attorney, United States Department of Justice, Civil Division, Washington, DC, with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, *Steven J. Gillingham,* Assistant Director, for defendant.

## OPINION AND ORDER FOR REMAND

BRUGGINK, *Judge*

Plaintiff seeks review of a decision by the Board for the Correction of Naval Records ("BCNR") not to place him on the Permanent Disability Retirement List. He seeks an order directing the Navy to place him on the Permanent Disability Retirement List and to issue him a medical discharge. Pending are the parties' cross-motions for judgment on the administrative

---

[1] This opinion was originally issued under seal and the parties afforded an opportunity to propose redactions. Neither party proposed any redactions; the opinion thus appears as in the original.

record pursuant to Rule 52.1 and defendant's motion to dismiss pursuant to rules 12(b)(1) and 12(b)(6). As explained below, we grant in part and deny in part defendant's motion to dismiss, deny defendant's motion for judgment upon the administrative record, and grant in part and deny in part plaintiff's cross-motion.

## BACKGROUND

Patrick Guarnieri enlisted in the United States Naval Reserve on July 21, 1967, and entered active duty in the United States Navy on April 29, 1969. While on active duty, he served in a combat base in Vietnam where he was exposed to mortar, artillery, and small arms attacks. He received several formal recognitions for his service in Vietnam. His military medical records from 1969 indicate, however, that he experienced "loss of weight" and "loss of alertness" after undergoing psychological trauma in combat situations. *See* Administrative Record ("AR") 5. Due to an evaluation that he no longer "me[]t Navy standards generally," Mr. Guarnieri was separated from active duty service under Honorable Conditions on November 20, 1969. *See* AR 206. He remained an active member of the Individual Ready Reserve until his six-year enlistment contract expired on June 20, 1973. *See* AR at 178 (original enlistment contract stating a six year term of service).

In 1979, Mr. Guarnieri petitioned the Veterans Administration ("VA") for benefits relating to a throat condition, which bothered him during active and reserve duty. *See* AR 192. Although the VA invited him to submit additional information along with a formal application for benefits, he did not further pursue it until twenty-five years later on June 10, 2004. *See id.*

In 2003, Mr. Guarnieri was diagnosed with PTSD by a VA doctor, thirty-four years after his separation from active duty. On November 1, 2004, the VA granted him a 70 percent disability rating for PTSD as a service connected disability. *See* AR 132-133. On November 22, 2006, a VA hospital in Florida also determined that Mr. Guarnieri's throat condition warranted a 30 percent disability rating. *See* AR 190.

Following his disability rating from the VA, Mr. Guarnieri sought correction of his naval records from the BCNR on April 25, 2007, asking the board to correct his records to reflect a disability discharge and a resulting retirement. On March 8, 2008, the Navy Council of Review Boards issued an advisory opinion regarding Mr. Guarnieri's petition. *See* AR 23-26. After

2

reviewing the evidence, the BCNR denied his application to be placed on the Temporary Disability List effective November 20, 1969, and to find him disabled. The BCNR found his petition to be untimely and determined that the interests of justice did not warrant waiving the three year statute of limitations provided in 10 U.S.C. § 1552(b). AR 1-2. The BCNR stated that (1) Mr. Guarnieri was aware of any error or injustice in his record when he was discharged from active duty on November 20, 1969; (2) he knew that his enlistment expired on June 20, 1973, and even if he did not receive formal notice soon after that date, he could have sought to clarify his status well before 2005; and (3) he submitted an initial VA disability claim in 1979 related to his throat condition but did not petition the board for correction of his naval record until 2007.[2] *See* AR 1-2.

Mr Guarnieri filed his original complaint with this court on April 16, 2014, seeking review of the BCNR's decision. On August 4, 2014, defendant filed its response to Mr. Guarnieri's original complaint. On September 3, 2014, however, the Secretary of Defense issued a new guidance memorandum regarding PTSD to Boards for Correction of Military Records, which directed that time limits be "liberally waived for applications covered by this guidance." *See* AR 214-17. The parties jointly moved for remand to the BCNR in order for the board to consider whether Mr. Guarnieri's application was the type covered by the new guidance from the Secretary of Defense. We granted that motion on October 7, 2014.

On remand, the board determined that the purpose of the guidance was to "help veterans who did not have the benefit of a PTSD diagnosis during their period of service to have their discharge potentially upgraded." AR 212. The guidance, therefore, did not apply to Mr. Guarnieri because he had received an honorable discharge and did not seek an upgrade in discharge. *See id.* The BCNR found once again that it would not be in the interest of justice to waive the statute of limitations. On February 2, 2015, Mr. Guarnieri filed an amended complaint.

---

[2]Mr. Guarnieri also alleged before the board that he never received a proper discharge from the Navy. Compl. ¶¶ 58, 70. The board denied any relief because it found that Mr. Guarnieri knew of his discharge when it happened or shortly thereafter, made no attempt to clarify his status until 2005, and, in any event, informed officials at the National Personnel Records Center in 2007 that he believed his discharge had taken place in 1973.

3

DISCUSSION

This court has jurisdiction pursuant to the Tucker Act, which grants jurisdiction over certain claims seeking money damages from the United States. 28 U.S.C. § 1491(a)(1) (2012). This includes actions for back pay pursuant to the Military Pay Act. *See* 37 U.S.C. § 204 (2012); *see also Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). This also extends to claims for pay and benefits that a service member would have received absent a wrongful discharge. *See Holley v. United States*, 124 F.3d 1462, 1463 (Fed. Cir. 1997). We may also order the correction of military records "as an incident of and collateral to" an award of monetary damages. 28 U.S.C. § 1491(a)(2); *see Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988).

All claims brought under the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501 (2012). Accordingly, for this court to entertain Mr. Guarnieri's claim, his suit must have been filed within six years after the accrual of the cause of action. Claims for military disability retirement pay do not accrue until the first competent military board either refuses to hear the claim or denies the claim. *See Chambers v. United States*, 417 F.3d 1218, 1244 (Fed. Cir. 2005). A claim for wrongful discharge accrues on the date of the claimant's discharge. *See Bonen v. United States*, 666 F.2d 536, 539 (1981).

Here, the BCNR was the first competent military board to handle Mr. Guarnieri's claim for disability retirement. As such, Mr. Guarnieri's disability claim accrued when the BCNR denied plaintiff's application for correction of military records as untimely on April 24, 2008. Therefore, this court has jurisdiction to hear that claim because Mr. Guarnieri filed suit within the six-year limitations period found in 28 U.S.C. § 2501. The government moves, however, for dismissal of any claim for wrongful discharge as time-barred because that claim would have separately accrued as of the date of plaintiff's discharge in 1969. We turn first to the issue of wrongful discharge.

I. Plaintiff's Wrongful Discharge Claim

There is some confusion regarding whether plaintiff intends to claim a wrongful a discharge. In his amended complaint, he alleged that the Navy did not properly discharge him from active duty or from the Naval Reserves because it did not administer appropriate examinations, did not place him on

4

the Temporary Disability Retirement List, and did not subsequently process him for disability retirement under 10 U.S.C. §1201. Amend. Compl. ¶ 70. That would seem to indicate that plaintiff was alleging a wrongful discharge. The government accordingly moved to dismiss that claim as barred by the statute of limitations. After defendant's motion to dismiss, however, plaintiff endeavored to clarify that he "at no time has asserted a claim for unlawful discharge." Pl.'s Response 2. Furthermore, plaintiff notes that it would be "impossible" for him to assert a wrongful discharge claim in light of his insistence that he has not ever been formally discharged by the U.S. Navy. *Id.* As such, plaintiff claims only "a request for disability retirement processing - followed by medical discharge." *Id.*

Plaintiff's subsequent disclaimer notwithstanding, to the extent that plaintiff's complaint alleges that the Navy failed to properly discharge him from active duty in 1969 or from reserve duty in 1973, 25 U.S.C. § 2501 bars this court from hearing such a claim because it would be untimely. A claim involving unlawful discharge or unlawful separation from service accrues when the individual is either discharged or separated from active duty. *See Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Any claim that plaintiff may have had against the Department of Navy for unlawful discharge or failure to properly administer his discharge first accrued when he was separated from active duty on November 20, 1969. As such, the six-year statute of limitations would have run for a wrongful discharge claim on November 20, 1975. Defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction is granted as it pertains to any claim for wrongful discharge. It is denied in all other respects.

II. Plaintiff's Disability Retirement Claim

We turn now to the BCNR's decision not to consider the merits of plaintiff's claim for disability retirement. Plaintiff petitioned the BCNR for the correction of his military records to reflect a service-connected disability discharge and a resulting disability retirement pursuant to 10 U.S.C. §§ 1201 and 1204.

In 2008, the BCNR denied plaintiff's application for correction of his records because it was filed well beyond the board's own three-year statute of limitations and because the circumstances did not warrant waiver of the limitation period. *See* AR 1. The board "concluded that [he] was aware of the alleged error or injustice in [his] record on 20 November 1969, when [he] was

5

released from active duty, rather than in 2004, when the Department of Veterans Affairs (VA) granted [him] service connection for posttraumatic stress disorder, or 2006, when the VA granted [him] service connection for a stricture of the esophagus." *Id.* In addition, the board noted that plaintiff submitted his first claim for VA disability compensation in 1979, but he did not submit an application to correct his medical record until thirty-eight years later, in 2007. The board found that such a long period of delay was sufficient reason not to waive the three-year limit. After remand, the BCNR, on January 9, 2015, found that the Secretary of the Navy's new guidance memorandum regarding PTSD did not cover plaintiff's application and reaffirmed its 2008 decision that plaintiff was untimely. *See* AR 212.

We review a decision of a military board for correction of records under the deferential standards prescribed for review of agency action in the Administrative Procedures Act, 5 U.S.C. §§ 701-06 (2012). *See Metz*, 466 F.3d at 998. The standard is whether the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998). Factual disputes are resolved by reference to the administrative record. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). Plaintiff must establish from this record "by clear and convincing evidence that the board's decision was arbitrary and capricious." *Rose v. United States*, 35 Fed. Cl. 510, 512 (1996).

Furthermore, when reviewing the determination of an administrative agency, this court shall take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. The Supreme Court has dubbed 5 U.S.C. § 706 the "administrative law. . . harmless error rule." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 659-60 (2007) (citing *PDK Labs., Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004)). If agency error is found, but the error was harmless rather than prejudicial, it was not critical to the decision or outcome and will thus not be the basis for overturning an agency's action. *See PDK Labs*, 362 F.3d at 799 ("If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.").

10 U.S.C. § 1552 empowers the "Secretary of a military department" to correct a service record whenever it is necessary to "correct or remove an injustice" through a delegation of authority to the military records corrections boards, in this case the BCNR. 10 U.S.C. § 1552(a). Subsection (b) limits the review of the boards to requests that are brought "within three years after [the

service member] discovers the error or injustice." *Id.* § 1552(b). The boards are authorized, however, to "excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." *Id.* The operative question is thus whether the board was arbitrary or capricious in finding that plaintiff had exceeded the three-year limitations period and not waiving that requirement.

Plaintiff takes issue with the date or dates on which the BCNR determined that his claim or claims accrued. In reliance upon *Real v. United States*, 906 F.2d 1557 (Fed. Cir. 1990), and *Chambers v. United States*, 417 F.2d 1218, 1226 (Fed. Cir. 2005), plaintiff argues that his claim for medical disability first accrued when the VA rated his PTSD and throat condition in 2004 and 2006 respectively. He contends that it was not until those dates that he discovered he had a medical disability retirement claim arising from his PTSD and throat disabilities. Plaintiff notes that "the statutory test is unarguably one of the claimant's actual, not constructive, notice," and that he received actual notice only upon receiving a VA disability rating. Pl.'s Opp'n and Mot. for J. on the AR 14 (quoting *Ridgely v. Marsh*, 866 F. 2d 1526, 1529 (D.C. Cir. 1989)).

The key according to plaintiff is his receiving a 30 percent or higher rating for his disabilities, which is required for a medical retirement under 10 U.S.C. § 1201(b). Before receiving such a rating, Mr. Gaurnieri asserts that he could not have known that he was entitled to naval disability benefits and thus could not have known that his service record was in error—the asserted error being that his records did not indicate that he was entitled to those benefits. Plaintiff received a 30 percent disability rating from the VA in 2004 for his PTSD and a 70 percent rating in 2006 for his throat condition. Both of those dates are within the three years prior to the filing of his petition at the BCNR. Plaintiff argues that his "first diagnosis of PTSD in 2003 [did] not indicate that it [was] disabling, service connected, or permanent, and therefore it would not have been subject to compensation under 10 U.S.C. § 1201 or 1204." Pl.'s Opp'n and Mot. for J. 16. Seizing upon the language in *Real* that accrual depends on actual knowledge of "statutory requirements for disability retirement," 906 F.2d at 1563, plaintiff urges that he cannot have been aware of his entitlement to disability retirement until he was rated 30 percent or more disabled by the VA, because a service member is only eligible for disability retirement upon a rating of 30 percent or higher. Thus, his claim did not accrue for the purposes of 10 U.S.C. § 1552(b) until at earliest November 1, 2004, or so urges plaintiff.

7

Defendant responds that the BCNR's decision was reasonable given the passage of time after plaintiff's discharge in 1969, although defendant does not specifically adopt that as the accrual date of plaintiff's claims. Defendant takes issue, however, with plaintiff's assertion that his disability retirement claim did not accrue until he received a specific percentage disability rating from the VA. Defendant argues that plaintiff's reliance on *Real* and *Chambers* is unfounded because those cases concern claim accrual under 28 U.S.C. § 2501, this court's six year statute, not 10 U.S.C. § 1552(b), on which the BCNR relied. Defendant also points to a number of events that took place more than three years before plaintiff filed his BCNR petition in 2008 as evidence that plaintiff knew of the "error or injustice" much earlier than 2004. *See* Def.'s Mot. 19. Specifically, plaintiff knew about his throat condition while in Vietnam, AR 206, sought VA benefits for his throat condition in 1979, AR 136, and was diagnosed with PTSD by the VA in 2003, AR 192. Given this evidence, defendant urges the court to uphold the board's decision that Mr. Guarnieri's disability claim is too late.

As an initial matter, defendant is correct that *Real* and *Chambers* do not address claim accrual under the statute at issue here. In those cases, the Federal Circuit considered whether veterans had waived their rights to have a competent military board hear their claims due to their failure to request a hearing board prior to discharge and thus whether that waiver had started the limitations clock under 25 U.S.C. § 2501 for purposes of timeliness in this court. *Chambers*, 417 F.3d at 1226; *Real*, 906 F.2d at 1563. In sum, "*Real* state[s] the rule for when suit must be filed in the Court of Federal Claims, not the time limit for the initial submission to the Board for the Correction of Naval Records." *Russell v. United States*, 65 Fed. Appx. 304, 305 (Fed. Cir. 2003). Plaintiff replies, however, that no principled distinction should be drawn between accrual under the two different statutes.

Plaintiff has not cited any cases, and we are unable to find any, in which courts determined timeliness under 10 U.S.C. §1552(b) in military disability retirement cases based on a post-service percentage rating from the VA. In fact, in at least one instance, this court found that a claimant discovered the error or injustice in his record when a physician informed him that he suffered from the disability, not through a subsequent rating. *See Mullen v. United States*, 19 Cl. Ct. 550, 551 (Cl. Ct. 1990) ("Although Mr. Mullen experienced depression and related psychopathological symptoms throughout the 1970s, it was not until 1981 that he was told by a physician that he suffered from PTSD.

8

Thus, it was not until 1981 that Mr. Mullen discovered that his honorable discharge in 1970 was in error; Mr. Mullen's April 13, 1982 application fell within the three-year limit."). At a minimum, we reject plaintiff's proffered statutory construction that only a percentage rating of disability begins the running of 10 U.S.C. 1552's limitations clock. We thus cannot reverse the corrections board on that ground alone.

The BCNR, in a brief letter, "concluded that [plaintiff] was aware of the alleged error or injustice in [his] record on 20 November 1969," his date of discharge from active duty, rather than at the time of the 2004 (PTSD) and 2006 (throat) ratings by the VA. AR 1. The board also pointed out that Mr. Guarnieri's first claim for VA benefits was in 1979, for his throat condition, and contrasted that with his 2007 petition for correction of his service records. It is unclear whether the board treated plaintiff's claims for wrongful (or ineffective) discharge and disability retirement separately or whether it viewed all of Mr. Guarnieri's allegations as a single claim for wrongful discharge. Although the board noted several subsequent events in the record, it cited only plaintiff's 1969 discharge as dispositive.

It is undisputed that a wrongful discharge claim accrues on the date of discharge. *See Martinez*, 333 F.3d at 1303-04. In so far as plaintiff's claim before the BCNR was for wrongful discharge, we agree with the board that it was well outside of the limitations period, and the board was not arbitrary or capricious as treating it as such or declining to waive that limitation.

Plaintiff's petition, however, went further. He also asked the board to correct his records to reflect a permanent service connected disability and for the disability retirement benefits attendant to such a disability. Such a claim does not necessarily accrue at the time of separation of service.[3] It accrues when the petitioner discovers the alleged error or injustice. 10 U.S.C. § 1552(b). *See also Russell v. United States*, No. 02-178C, 2002 U.S. Claims LEXIS 257, at *14-15 (Fed. Cl. Oct. 2, 2002), *aff'd* 65 F. App'x 304 (Fed. Cir. 2003). The law countenances the possibility that a service member would not be aware of a disabling condition until after separation from active service. In such cases, as noted in the *Mullen* order above, it is upon actual knowledge of that condition that a claim accrues. 19 Cl. Ct. at 501. The board's decision

---

[3] That is not to say that such claims cannot arise at the date of discharge, or even before, when a service member is aware of his disabling condition while still on active or other non-retired duty status.

does not address whether Mr. Guarnieri knew of his disabling condition, at least with respect to PTSD, in 1969 or any date thereafter.

It is also curious that the Administrative Record contains an advisory opinion regarding Mr. Guarnieri rendered by the Secretary of the Navy Council for Review Boards in which a much more detailed examination of plaintiff's military and subsequent medical records is presented. It concludes with regard to PTSD that plaintiff's condition at the time of discharge fell short of disabling and thus did not entitle him to a disability retirement. AR 3-4. As to plaintiff's throat condition, the advisory opinion states that it was preexisting and that his service records do not indicate aggravation during service. AR 4. The BCNR's decision, however, makes no mention of this opinion nor does it rely on any of the same findings or reasoning. The board considered only the timeliness of Mr. Guarnieri's petition, while the advisory opinion went to the merits of his disability claims. Although the board may have been perfectly reasonable to have relied on some of the underlying factual considerations offered in the advisory opinion in reaching its decision on timeliness, it did not record any such reliance in its decision. It is thus not open to the court to buttress the board's decision with the advisory opinion. We simply cannot tell what the board relied on in denying all of Mr. Guarnieri's claims as untimely. For aught that appears, the board simply treated all of his claims as for wrongful discharge and ignored his petition for disability benefits. That error can only be corrected by remand to the BCNR.

That remand will be limited, however, to the board's consideration of plaintiff's claim for PTSD as a disabling condition. Our review of the evidence contained in the record leads us to conclude that plaintiff knew of the "error or injustice" in his record for the purposes of his throat condition at the very latest in 1979 when he submitted his first claim for VA disability compensation for that condition. It was therefore, at worst, harmless error for the board to have found that 1969 was the accrual date for the throat condition disability claim when the record is clear that plaintiff believed himself to have been deserving of disability benefits in 1979.[4] It would thus be a vain act to remand that issue for consideration by the board. *See PDK Labs*, 362 F.3d at 799.

---

[4] We also note that the BNCR cited the 1979 application for benefits in its decision, albeit without further explanation or reliance on it.

## CONCLUSION

The BCNR erred in failing to record in its decision why Mr. Guarnieri's PTSD retirement claim accrued upon his discharge in 1969, if it considered that claim at all. It is therefore ordered that this case be remanded to the Board for Correction of Naval Records to determine, and adequately explain, when Mr. Guarnieri knew of the alleged error or injustice in his record. If the BCNR concludes that Mr. Guarnieri's PTSD-related retirement claim was timely presented to it, or that the interest of justice supports a waiver of the three-year limit, the board is further directed to consider the merits of that claim.

ERIC G. BRUGGINK
Judge

11